UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES M. NELSON, an individual | No. 2:12-cv-02040-MCE-GGH |
| Plaintiff, | |
| v. | **MEMORANDUM AND ORDER** |
| COUNTY OF SACRAMENTO, a governmental entity, et al. | |
| Defendants. | |

Plaintiff James M. Nelson ("Plaintiff") brought this action against Defendants County of Sacramento ("County"), Sacramento County Sherriff's Department ("Sheriff's Department"), Sacramento County Sheriff Scott R. Jones ("Jones"), Murray Boulware ("Boulware"), Sacramento County Sheriff's Deputy Michael Vale ("Vale"), and Sacramento County Sheriff's Deputy Jeffrey Shelldorf ("Shelldorf") (collectively referred to as "Defendants") on August 23, 2012.[1]

///

///

///

---

[1] Because oral argument will not be of material assistance, the Court ordered this matter submitted on the briefs. E.D. Cal. Local Rule 230(g).

1

1   Plaintiff alleges in his First Amended Complaint ("FAC") that Defendants deprived him of
2   his Constitutional rights in violation of 42 U.S.C. § 1983 and also committed battery,
3   assault, false arrest, intentional infliction of emotional distress and elder abuse against
4   him.[2]  Now before this Court is Defendants' Motion to Dismiss brought pursuant to
5   Federal Rule of Civil Procedure 12(b)(6).[3]  (Defs.' Mot. to Dismiss FAC, Oct. 16, 2012,
6   ECF No. 14.)  Defendants argue:  (1) Plaintiff cannot assert a valid Fourteenth
7   Amendment claim; (2) the Sheriff's Department should be dismissed as a defendant
8   because it is not a proper party to this action; (3) Boulware should be dismissed as a
9   defendant because Plaintiff failed to state a claim against Boulware; (4) Jones has
10  Eleventh Amendment immunity from § 1983 liability; (5) Because of Jones's immunity,
11  the County should be dismissed as a defendant; and (6) this Court should decline to
12  exercise supplemental jurisdiction over the remaining claims and defendants.

## BACKGROUND

Plaintiff is a seventy-two-year-old veteran with hearing problems who subsists on Social Security.  (FAC ¶ 8, 11.)  On January 1, 2012, he drove to Sacramento International Airport's Terminal B, which was under construction, to pick up his daughters.  Plaintiff parked his car at the curb in front of the terminal and went inside to check the status of his daughters' flight.  Plaintiff claims he did not see any signs restricting parking at the curb, but when he returned from the terminal, Boulware was placing a parking citation on Plaintiff's vehicle.  Plaintiff claims he told Boulware that Plaintiff could not afford the ticket, but Boulware responded, "Not my problem."  (FAC ¶¶ 10, 11.)

///

---

[2] Plaintiff only alleges § 1983 and elder abuse claims against Jones.

[3] All further references to "Rule" or "Rules" are to the Federal Rules of Civil Procedure unless otherwise noted.

2

Plaintiff drove away, circled the airport and returned to the terminal ten minutes later, remaining in the vehicle this time. Plaintiff alleges Boulware told Plaintiff that Plaintiff could not park at the curb and that if Plaintiff did not leave, "I will call the cops." Plaintiff alleges airport policy allowed motorists picking up passengers to sit at the curb for up to five minutes. Plaintiff told Boulware, "Someone should kick your ass" and "go ahead and call the cops." Plaintiff then drove away from the terminal a second time before turning around and once again heading back toward the airport. (FAC ¶¶ 11, 12, 14.)

Plaintiff alleges Boulware informed the Sheriff's Department that Plaintiff was driving at the airport. According to Plaintiff, Vale and Shelldorf received a dispatch describing Plaintiff and his vehicle and then spotted Plaintiff driving back toward the terminal. According to Plaintiff, the deputies pulled over Plaintiff, who then stepped out of his vehicle to determine why the deputies stopped him. Plaintiff alleges the deputies threw him to the ground, pinned his right arm behind his back, punched him in the head, grabbed his left ankle and dragged him on the road and into a standing position before handcuffing him. (FAC ¶¶ 14-16.)

Plaintiff claims he then was treated for facial lacerations and abrasions before Vale and Shelldorf booked and jailed him at the Sacramento Central Main Jail for resisting arrest and obstructing a police officer in the performance of his duties. Plaintiff was released from jail about 4:30 a.m. on January 2, 2012, and claims he immediately went to the Sacramento Veteran's Administration Medical Center Emergency Department for examination and treatment. (FAC ¶¶ 17-18.)

Plaintiff was charged with two misdemeanors: resisting a peace officer in the discharge of his duty and use of offensive words. Plaintiff pled not guilty to both charges, which ultimately were dismissed. (FAC ¶¶ 19-21.) Plaintiff subsequently brought the present action and filed his FAC on September 25, 2012. (Pl.'s FAC, Sept. 25, 2012, ECF No. 9.) Plaintiff claims Vale and Shelldorf used excessive force against him during the arrest.

Plaintiff further alleges the County, the Sheriff's Department, and Jones established and maintained an unconstitutional policy, decision, directive, action and/or order that resulted in: (1) deliberate indifference to a pattern of excessive force; (2) inadequate training of deputies in questioning, detaining and custody of individuals; and (3) avoiding and/or covering up complaints of physical attacks on citizens by law enforcement officers.  (FAC ¶ 25.)  Plaintiff alleges Defendants' actions deprived Plaintiff of his Fourth, Fifth, and Fourteenth Amendment rights in violation of 42 U.S.C. § 1983.  (FAC ¶ 29.)  In addition to his constitutional claims under § 1983, Plaintiff also asserts state tort claims for battery, assault, false arrest and intentional infliction of emotional distress, as well as elder abuse under California Welfare & Institutions Code sections 15610.63 and 15657.  (FAC ¶ 34-70.)

Presently before the Court is Defendants' Motion to Dismiss Plaintiff's FAC.  (ECF No. 14.)

**STANDARD**

On a motion to dismiss for failure to state a claim under Rule 12(b)(6), all allegations of material fact must be accepted as true and construed in the light most favorable to the nonmoving party.  Cahill v. Liberty Mut. Ins. Co., 80 F.3d 336, 337-38 (9th Cir. 1996).  Rule 8(a)(2) "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  Bell. Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)).  A complaint attacked by a Rule 12(b)(6) motion to dismiss does not require detailed factual allegations.  Id.  However, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  Id. (internal citations and quotations omitted).

A court is not required to accept as true a "legal conclusion couched as a factual allegation." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 555). The Court also is not required "to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." In re Gilead Sciences Sec. Litig., 536 F.3d 1049, 1055 (9th Cir. 2008) (internal citations and quotations omitted).

"Factual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. Furthermore, "Rule 8(a)(2) . . . requires a 'showing,' rather than a blanket assertion, of entitlement to relief." Twombly, 550 U.S. at 556 n.3 (internal citations and quotations omitted). "Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirements of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests." Id. (citation omitted). A pleading must contain "only enough facts to state a claim to relief that is plausible on its face." Id. at 570. If the "plaintiffs . . . have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." Id. However, "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" Id. at 556 (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)).

A court granting a motion to dismiss a complaint must then decide whether to grant a leave to amend. Leave to amend should be "freely given" where there is no "undue delay, bad faith or dilatory motive on the part of the movant, . . . undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of the amendment . . . ." Foman v. Davis, 371 U.S. 178, 182 (1962); Eminence Capital, LLC v. Aspeon, Inc., 316 F.3d 1048, 1052 (9th Cir. 2003) (listing the Foman factors as those to be considered when deciding whether to grant leave to amend). Dismissal without leave to amend is proper only if it is clear that "the complaint could not be saved by any amendment." Intri-Plex Techs., Inc. v. Crest Group, Inc., 499 F.3d 1048, 1056 (9th Cir. 2007) (internal citations and quotations omitted).

**ANALYSIS**

A. **Plaintiff's § 1983 Claims; Defendants' Eleventh Amendment Immunity Defense.**

1. **Distinguishing Between Plaintiff's Fourth and Fourteenth Amendment Claims.**

Section 1983 provides relief against "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . causes . . . any citizen of the United States . . . the deprivation of any rights, privileges, or immunities secured by the Constitution." 42 U.S.C. § 1983. Section 1983 gives parties "a method for vindicating federal rights elsewhere conferred." Graham v. Connor, 490 U.S. 386, 394 (1989) (quoting Baker v. McCollan, 443 U.S. 137, 144 n.3 (1979)). Parties can seek relief under § 1983 against persons acting under the color of state law. West v. Atkins, 487 U.S. 42, 48 (1988). "Persons" covers "state and local officials sued in their individual capacities, private individuals and entities which acted under color of state law, and local governmental entities." Vance v. Cnty. of Santa Clara, 928 F. Supp. 993, 995-96 (N.D. Cal. 1996).

Plaintiff must allege "personal participation" in the alleged constitutional violation on the part of the individual to subject that person to individual liability; this is a "personal-capacity" suit under § 1983. Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002). "Persons" includes municipalities and their agents only in the narrow instances when the municipality itself causes the Constitutional violation through a policy or custom; this is an "[o]fficial-capacity suit" under § 1983. Monell v. New York Dep't of Social Services, 436 U.S. 658, 690 n.55, 691 (1978). In a personal-capacity § 1983 claim, a government official personally causes a deprivation of a federal right and is personally liable. In an official-capacity claim, the governmental entity or its agents act as the "moving force" behind the deprivation, and the entity remains liable for the actions of its agents. Kentucky v. Graham, 473 U.S. 159, 165-67 (1985).

///

Understanding the difference between 1) an official-capacity Monell theory of liability against a municipality and 2) a personal-capacity theory of liability against the individual law enforcement officers involved in the alleged violation is critical to resolving the Fourteenth and Eleventh Amendment issues in this case.

Plaintiff asserts Defendants' actions or omissions deprived Plaintiff of his Fourth and Fourteenth Amendment rights "to be free from excessive, unreasonable, and/or unjustified use of force or restraint by state officials such as occurred in the beating and restraint of, and injuries to, plaintiff by defendants . . . ." (FAC ¶ 29.)  Defendants move to dismiss Plaintiff's Fourteenth Amendment claim on the grounds that Plaintiff cannot invoke that amendment's due process clause to pursue an alleged violation of a right that has explicit protection under a more specific provision of the Constitution.  In this case, Defendants assert Plaintiff's alleged Fourth Amendment violation based on his arrest is improper as a Fourteenth Amendment claim.  (ECF No. 14 at 3.)

In Connor, the Supreme Court held that "all claims that law enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard, rather than under a 'substantive due process' approach." 490 U.S. at 395.

Defendants argue that because Plaintiff's claims rely on the use of excessive force by law enforcement officers during an arrest, Connor mandates examination under the scope of the Fourth Amendment, not the more general Fourteenth.  (ECF No. 21 at 2.)  Plaintiff counters that under Monell and its progeny, plaintiffs can bring Fourteenth Amendment claims where inadequate policy training leads to "deliberate indifference to the rights of persons with whom [law enforcement officials] come into contact." City of Canton, Ohio v. Harris, 489 U.S. 378, 388-89 (1989) (emphasis added).  Both parties are partially correct.

///

///

The cases that Defendants cite in support of dismissal deal with § 1983 personal-capacity suits for alleged constitutional violations, not official-capacity suits against municipalities and their agents for alleged unconstitutional policies. With regard to Plaintiff's claims against Boulware, Vale and Shelldorf for the use of excessive force in their personal capacities, Defendant is correct that these claims must be analyzed under the Fourth Amendment's reasonableness standard, not a substantive due process approach. However, Plaintiff's claims against the County, the Sheriff's Department, and Jones are based on an official-capacity Monell theory of "deliberate indifference" to a pattern or practice of violations of individuals' civil rights. Plaintiff is correct that Monell claims are properly examined under the Fourteenth Amendment. (ECF No. 15 at 5-6.)

## 2. Eleventh Amendment Immunity.

However, before this Court can address whether Plaintiff stated a valid Monell claim against Jones, it must first determine whether the Eleventh Amendment even allows such a claim. Defendants contend Eleventh Amendment immunity protects Jones from suit in this instance. (ECF No. 14 at 14.) As discussed above, § 1983 makes "persons" acting under the color of law liable for Constitutional deprivations. "Persons" includes local governments whose officials commit constitutional torts "according to municipal policy, practice, or custom." Weiner v. San Diego Cnty., 210 F.3d 1025, 1028 (9th Cir. 2000). "Persons" does not include "the State and arms of the State," which receive sovereign immunity from the Eleventh Amendment. Howlett v. Rose, 496 U.S. 356, 365 (1990). The question in this case is whether Jones is a local actor, as Plaintiff argues, or a state actor, as Defendants contend.

This determination requires a two-step analysis. First, the court must ask whether the official has "final policymaking authority concerning the action alleged to have caused the particular constitutional or statutory violation at issue." Weiner, 210 F.3d at 1028.

If the court finds the official was the final policy maker, then it looks to "the actual function of [the] governmental official, in a particular area" based on "the definition of the official's functions under relevant state law." Id. at 29 (citing McMillian v. Monroe Cnty. Ala., 520 U.S. 781, 86 (1997)) (internal quotations omitted). Although courts analyze state law to make this determination, the question ultimately is one of federal law. McMillian, 520 U.S. at 786; Brewster v. Shasta Cnty., 275 F.3d 803, 806 (9th Cir. 2001).

Using this framework in 2001, the Ninth Circuit concluded that a sheriff, while investigating a crime in his official capacity, was a local actor and not immune from a § 1983 claim. Brewster, 275 F.3d at 805. In 2004, the California Supreme Court reached the opposite conclusion. Considering the constitutional and statutory supervisory authority the California Attorney General has over the state's sheriffs, the California Supreme Court found a sheriff to be a state actor for the purposes of investigating and prosecuting crime, training staff, and developing policy. Venegas v. Cnty. of Los Angeles, 32 Cal. 4th 820, 838-39 (2004). The United States District Court for the Northern District of California subsequently followed the California Supreme Court, thereby also departing from Ninth Circuit precedent. See Walker v. Cnty. of Santa Clara, 2005 WL 2437037 (N.D. Cal. Sept. 30, 2005) (finding the sheriff and his deputies to be state officials for the purposes of a murder investigation and immune from Plaintiff's Monell claims). Defendants argue that since the Ninth Circuit must look to state law in making its determination and state law has changed since Brewster, this Court should follow the Northern District and accept Venegas' conclusion that sheriffs are state actors and thus immune from a § 1983 suit. (ECF No. 14 at 10-12.)

Defendants' argument ignores the fact that this is far from the first time this issue has arisen in this district since the decisions in Venegas and Walker. The Eastern District of California confronted the issues presented by Brewster, Venegas and Walker in Brockmeier v. Solano Cnty. Sheriff's Dep't, 2006 WL 3760276 (E.D. Cal. Dec. 18, 2006). Brockmeier concluded:

///

9

> [W]hile Venegas is relevant in this court's analysis of state law as required by McMillian, it does not overturn Ninth Circuit precedent on the ultimate question under the federal statute. Unless overturned by a panel of the Ninth Circuit or the United States Supreme Court, the Ninth Circuit's holding in Brewster binds this court. Furthermore, an independent analysis of the issue reveals that the Brewster decision reflects a stricter adherence to the McMillian framework than the Venegas decision, whose holding is based largely on two state court decisions that the Brewster court rejected.

Id. at *6 (internal quotations omitted). Brockmeier added it could not follow Walker and "blindly accept" the decision in Venegas." Id. at *9.

This District has had numerous chances to retreat from that position since and has steadfastly maintained its adherence to Brewster, finding a sheriff is a local actor when investigating crime or running a jail. See Byrd v. Teater, 2008 WL 495757 *20-*21 (E.D. Cal. Feb. 21, 2008); Garcia v. City of Merced, 637 F. Supp. 2d 731, 759 (E.D. Cal. 2008); Vega v. Cnty. of Yolo, 2009 WL 1992532 *4 (E.D. Cal. July 8, 2009); Prescott v. Cnty. of Stanislaus, 2010 WL 3783950 *6 (E.D. Cal. Sept. 27, 2010); Rainwater v. McGinnis, 2012 WL 3308894 *19-*20 (E.D. Cal. Aug. 13, 2012). The Eastern District is not alone in its continuing adherence to Brewster. See Smith v. Cnty. of Los Angeles, 535 F. Supp. 2d 1033, 1037-38 (C.D. Cal. Feb. 7, 2008) (noting that following Venegas would "end federal civil rights litigation as we know it," concluding Venegas "misapplied federal law," and urging the California Supreme Court to reconsider the decision). Both the Eastern and Central District of California have repeatedly rejected Defendants' arguments, and this Court does the same now.

Next, Defendants attempt to distinguish the Ninth Circuit line of cases finding that sheriffs are local actors. Defendants argue that those cases dealt with investigatory duties, while this case involves policies and training methods with regard to the use of force, arrests and the prosecution of criminal activities. (ECF No. 14 at 12.)

///
///
///

Defendants' argument finds a hint of support in dicta from two Eastern District cases – Vega and Rainwater.[4]

However, Defendants' argument fails for two reasons. First, both Vega and Rainwater distinguish Venegas based on the hypothetical that if Venegas controlled, it still would be distinguishable. Venegas does not control, and dicta dealing in hypotheticals does not change that. Second, while Brewster's holding addressed crime investigations, its reasoning was not so limited. Brewster noted that county boards of supervisors have authority over the "law enforcement conduct." 275 F.3d at 811. Furthermore, Brewster mentioned that the county controlled the sheriff's salary and would be liable for monetary damages under § 1983 in California. Id. at 810. These three factors also weigh in favor of finding the sheriff to be a local actor when implementing and overseeing arrest policies. As Brewster concluded, "our own court has long assumed that sheriffs act on behalf of the county, even when investigating crime." Id. at 811 (emphasis added). Crime investigation is but one aspect of a sheriff's "law enforcement conduct" that falls under the local actor umbrella. See Brown v. Cnty. of Kern, 2008 WL 544565 at *11-*12 (following Brewster to find a county sheriff to be a local actor in an excessive force arrest case); see also Garcia, 637 F. Supp. 2d at 760 (finding sheriffs to be local actors when "executing their law enforcement duties").

Defendants cannot point to a single Ninth Circuit or Eastern District of California decision finding a sheriff to be a state actor when it comes to implementing policies regarding arrests and the use of force. Furthermore, in the same brief in which Defendants argue Jones is a state actor, they also assert the Sheriff's Department and the County are redundant parties. (ECF No. 14 at 4.)

---

[4] See Vega, 2009 WL 1992532 at *4 ("[E]ven if Venegas were binding authority, it is inapplicable to the present case. Venegas held that the sheriff acts on behalf of the state while performing state law enforcement duties such as investigating possible criminal activity. Because Venegas involved an unreasonable search and seizure claim, which arose during the sheriff's performance of a core law-enforcement function, it is wholly dissimilar to the instant case both in its facts and in the principle for which it stands.") (internal citations and quotations omitted). See also Rainwater, 2012 WL 3308894 at *20 (distinguishing Venegas as an unreasonable search-and-seizure case that was inapplicable to the core law-enforcement function of jail housing conditions).

It is contradictory, if not disingenuous, to argue the County and the Sheriff's Department are redundant parties, but that the head of the Sheriff's Department is a state actor, not a local actor for the County. In any event, Defendants' arguments fail. This Court finds Jones to be a local actor who is not immune from a § 1983 suit for purposes of this case.

### 3. Plaintiff's § 1983 Claims Against the County and Jones.

Having concluded that Jones is a local actor and is not entitled to Eleventh Amendment immunity in the present action, this Court turns its attention back to Plaintiff's Fourteenth Amendment claims.[5] Plaintiff must show the inadequate policy training, which Jones allegedly implemented, led to "deliberate indifference to the rights of persons with whom [law enforcement officials came] into contact." Canton, 489 U.S. at 388. Even according to the cases Plaintiff cites in support of his argument, deliberate indifference is a "stringent standard, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." Connick v. Thompson, 131 S. Ct. 1350, 1360 (2011) (internal citations and quotations omitted). "A pattern of <u>similar constitutional violations</u> by untrained employees is ordinarily necessary to demonstrate deliberate indifference for purposes of failure to train." Id. at 1360 (internal quotations omitted) (emphasis added).

///

---

[5] While Plaintiff asserts his claims against Jones as an "individual" (FAC ¶ 4), Defendants argue the FAC does not reference any action Jones took in his individual capacity; therefore, this Court should analyze Plaintiff's claims against Jones in his official capacity. As discussed above, the distinction between official-capacity claims and personal-capacity claims under § 1983 is important. Plaintiff's claims essentially assert that Jones failed to do his job by not properly training his deputies, tolerating a pattern of abuse by his deputies, and not investigating complaints against his deputies (FAC ¶ 25). See Hamer v. El Dorado Cnty., 2010 WL 670780 *4 (E.D. Cal. Feb. 19, 2010) (noting that when a plaintiff sued a sheriff in his "individual capacit[y]" for failing to do his job as legally required, the plaintiff actually asserted official-capacity claims). Plaintiff seems to implicitly accept Defendants' argument when Plaintiff asserts Jones is a local actor and not a state actor for Eleventh Amendment purposes. (ECF No. 15 at 14-16.) This argument necessarily examines Jones in his official capacity as the Sheriff Department's decision-maker. The FAC does not make any allegations about Jones's personal participation in the alleged incident at Sacramento International Airport. Therefore, this Court agrees with Defendants that Plaintiff brings official-capacity claims against Jones and will analyze them as such.

Accepting all Plaintiff's allegations of material fact as true, as this Court must on this Rule 12(b)(6) motion, the FAC is devoid of alleged facts indicating a pattern or custom of behavior on the part of Defendants. Plaintiff needs more than the formulaic recitation of the elements of a claim to withstand a motion to dismiss; he needs factual allegations sufficient to raise his claim above a speculative level. Twombly, 550 U.S. at 555. Here, no factual allegation in the FAC supports Plaintiff's assertion that a Sheriff's Department policy of inadequate training existed and resulted in a pattern of abuse.

"In a narrow range of circumstances," a plaintiff might not need to show a pattern of similar violations. Connick, 131 S. Ct. at 1361 (internal citations and quotations omitted). However, the Supreme Court in Connick noted that finding a single instance sufficient for a failure-to-train claim was only appropriate where the "unconstitutional consequences" were "highly predictable" and "patently obvious." Id. The Supreme Court cautioned that this single-instance rule applied only in rare situations and used the hypothetical of a city not training its armed officers in the use of deadly force when capturing fleeing felons. Id. In this case, Plaintiff has not alleged any facts regarding a policy that would constitute one of these rare situations where the unconstitutional consequences were "patently obvious." Instead, Plaintiff alleges a general policy of not properly training deputies in the areas of questioning, detention, and custody of individuals. (FAC ¶ 25.) That is not sufficient to withstand Defendants' Motion to Dismiss on this issue. Therefore, Plaintiff's Fourteenth Amendment claims against the County and Jones are DISMISSED with leave to amend.

### 4. Claims Against Sheriff's Department.

Under § 1983, "persons" includes municipalities. It does not include municipal departments. Vance, 928 F. Supp. at 995-96. Because the Sheriff's Department is a subdivision of a local government entity (in this case the County), the Sheriff's Department is not a proper defendant for purposes of Plaintiff's § 1983 claims. See Garcia, 637 F. Supp. 2d at 760.

Therefore, the § 1983 claims against the Sheriff's Department are DISMISSED with prejudice. However, this finding does not end the inquiry regarding the Sheriff's Department's status as a defendant in this case.

While respondeat superior is an improper basis for imposing liability under § 1983, see Monell, 436 U.S. at 692-94, it remains a valid basis for a state law claim. See Perez v. Van Groningen & Sons, Inc., 41 Cal. 3d 962, 967-68 (1986). Plaintiff asserts state law claims of battery, assault, false arrest, intentional infliction of emotional distress and elder abuse against the Sheriff's Department under a theory of respondeat superior. (ECF No. 15 at 10.) Under 28 U.S.C. § 1367(a), in any civil action in which district courts have original jurisdiction, those courts can exercise supplemental jurisdiction over claims that are part of "the same case or controversy." The "same case or controversy" requirement is met where the claims share a "common nucleus of operative fact." Mendoza v. Zirkle Fruit Co., 301 F.3d 1163, 1174 (9th Cir. 2002). Plaintiff's state law allegations stem from the same incidents that comprise Plaintiff's remaining § 1983 claims against Vale and Shelldorf. Therefore, even though this Court dismisses the § 1983 claims against the Sheriff's Department, it retains supplemental jurisdiction over Plaintiff's state law claims against the Sheriff's Department. Thus, Defendants' Motion to Dismiss the Sheriff's Department as a defendant in this case is DENIED.

The same holds true for Plaintiff's state law claims against the County for battery, assault, false arrest, intentional infliction of emotion distress, and elder abuse and against Jones for elder abuse. Even though this Court dismissed the § 1983 claims against the County and Jones, Plaintiff's state law claims remain part of the same case or controversy; therefore, this court retains supplemental jurisdiction over them. Plaintiff's Motion to Dismiss the County and Jones as defendants is DENIED.

///
///
///

14

**B.  Claims Against Boulware.**

    **1.  § 1983 Claim**

This Court now turns its attention to Plaintiff's claims against Boulware, who allegedly wrote Plaintiff a ticket in front of the terminal and then notified the Sheriff's Department of Plaintiff's presence in the airport.  Plaintiff's theory essentially rests on the assertion that Boulware acted under the color of state law as a Sheriff's Department employee and deprived Plaintiff of his Fourth Amendment right to be free from unreasonable search and seizure when Boulware provided information to Vale and Shelldorf that led the deputies to illegally arrest Plaintiff.  (FAC ¶ 13; ECF No. 15 at 10-11.)  This issue turns on whether Boulware deprived Plaintiff of his rights by notifying the Sheriff's Department of Plaintiff's presence at the airport.  Defendants assert that Boulware played no role in the deputies' decision to stop Plaintiff's vehicle or the subsequent allegations against the deputies.  (ECF. No. 14 at 4.)  Plaintiff counters that without Boulware notifying the deputies of Plaintiff's presence at the airport, the arrest never would have happened.  (ECF No. 15 at 10-11.)

    While Plaintiff makes a but-for causation argument, he also must show Boulware was the proximate cause of the deprivation of Plaintiff's constitutional rights to meet the requirements of a § 1983 claim.  A § 1983 defendant is responsible for the "natural consequences of his actions." <u>Malley v. Briggs</u>, 475 U.S. 335, 344 n.7 (1986).  Accepting all Plaintiff's allegations of material fact as true, the natural consequence of Boulware notifying the deputies of Plaintiff's presence and actions at the airport was that the deputies would detain Plaintiff.  If the deputies did not have probable cause for that detention, then the arrest would violate Plaintiff's Fourth Amendment right to be free from unreasonable search and seizure.  <u>Whren v. United States</u>, 517 U.S. 806, 809-10 (1996).  Therefore, Plaintiff has sufficiently pled Boulware's personal involvement in his arrest.

///

15

See Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002) (noting the plaintiff in a § 1983 claim must make "a showing of personal participation in the alleged rights deprivation" by the defendant to satisfy the proximate cause requirement).

Defendants' Motion to Dismiss the § 1983 claim against Boulware is DENIED.

### 2. Battery, Assault, False Arrest, Intentional Infliction of Emotional Distress, and Elder Abuse as a Joint Tortfeasor.

Plaintiff makes subsequent allegations that Boulware became a joint tortfeasor by aiding and abetting the deputies' alleged battery, assault, false arrest, intentional infliction of emotional distress and elder abuse of Plaintiff.  However, those allegations devolve into pure speculation, which Twombly prohibits.  550 U.S. at 555.  All Plaintiff alleges is that Boulware notified the Sheriff's Department about Plaintiff's presence at the airport.  (FAC ¶ 13.)  Plaintiff then speculates that Vale and Shelldorf's "disproportionate reaction" leads to an inference that Boulware falsely identified Plaintiff as a threat such that the deputies felt the need to exert physical force against Plaintiff.  (ECF No. 15 at 12.)  However, to support the inference that Boulware is a joint tortfeasor, Plaintiff needs to allege more than Boulware's notification.  Plaintiff must allege Boulware gave "substantial assistance or encouragement" to the deputies to act in the manner alleged.  Saunders v. Superior Court, 27 Cal. App. 4th 832, 846 (1994).  No such allegations appear in the FAC.  This Court is not required "to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences."  In re Gilead Sciences Sec. Litig., 536 F.3d at 1055 (internal citations and quotations omitted).

Therefore, Defendants' Motion to Dismiss Plaintiff's claims for battery, assault, false arrest, elder abuse, and intentional infliction of emotional distress as a joint tortfeasor against Boulware is GRANTED with leave to amend.

///

### 3. Individual Liability for Intentional Infliction of Emotional Distress.

Plaintiff further alleges a claim for intentional infliction of emotional distress against Boulware in his personal capacity. Plaintiff must show (1) Boulware's conduct was extreme and outrageous with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) Plaintiff suffered severe or extreme emotional distress; and (3) Boulware's outrageous conduct was the actual and proximate cause of the emotional distress. Potter v. Firestone Tire & Rubber Co., 6 Cal. 4th 965, 1001 (1993). Extreme and outrageous conduct is "so extreme as to exceed all bounds of that usually tolerated in a civilized community." Id. "California courts have set a high bar for emotional distress claims, requiring 'emotional distress of such substantial quality or enduring quality that no reasonable [person] in civilized society should be expected to endure it.'" Lust v. State Farm Mut. Auto Ins. Co., 2012 WL 592060 *3 (E.D. Cal. Feb. 22, 2012) (quoting Kelley v. Conco Cos., 196 Cal. App. 4th 191, 215-16 (2011)).

#### a. Severe or Extreme Emotional Distress.

Plaintiff alleges his emotional distress includes "pain, grief, shame, humiliation, embarrassment, anger, disappointment, depression, sleeplessness, anxiety, disappointment, damage to reputation, and worry." (FAC ¶ 30.) These types of conclusory statements lack specific facts to show their nature and extent. Some level of emotional distress is inevitable in our society. Plaintiff has failed to plead facts that show why his alleged emotional distress rises to the level that "no reasonable [person] . . . should be expected to endure it."

///
///
///

See Kelley, 196 Cal. App. 4th at 216 (internal citations and quotations omitted); see also Hughes v. Pair, 46 Cal. 4th 1035, 1051 (2009) (finding a claim that Plaintiff suffered discomfort, worry, anxiety, upset stomach, concern, and agitation did not comprise severe emotional distress); Hamilton v. Prudential Fin., 2007 WL 2827792 *4 (E.D. Cal. Sept. 27, 2007) (finding general allegations of depression, frustration, nervousness, and anxiety insufficient to show severe emotional distress).

### b.     Extreme and Outrageous Conduct

Plaintiff also needs to show Boulware's conduct was "so extreme as to exceed all bounds of that usually tolerated in a civilized community." Potter, 6 Cal. 4th at 1001. Objectively offensive conduct that exceeds standards of decency still may not be outrageous. Yurick v. Superior Court, 209 Cal. App. 3d 1116, 1129 (1989).  All Plaintiff has pled is that Boulware gave Plaintiff a citation for parking along the terminal curb, told the Plaintiff he could not sit in his car in front of the terminal, and then notified the Sheriff's Department about Plaintiff's presence at the airport, possibly giving the department false information that led Vale and Shelldorf to arrest Plaintiff.  The FAC does not demonstrate Boulware's actions were "especially calculated" to cause Plaintiff severe emotional distress. Ochoa v. Superior Court, 39 Cal. 3d 159, 165 n.5 (1985).

Therefore, Defendants' Motion to Dismiss Plaintiff's claims of intentional infliction of emotional distress against Boulware in his individual capacity is GRANTED with leave to amend.

### C.     Supplemental Jurisdiction over Remaining State Law Claims.

Finally, Defendants move to have Plaintiff's remaining state claims dismissed for lack of jurisdiction.  Defendants' motion assumes this Court dismissed Plaintiff's federal claims.

As previously discussed, this Court did not dismiss Plaintiff's § 1983 claim against Boulware.  Furthermore, Plaintiff's § 1983 claims against Vale and Shelldorf remain. Therefore, this Court retains its supplemental jurisdiction over Plaintiff's remaining state claims, and Defendants' Motion to Dismiss Plaintiff's remaining state law claims is DENIED.

## CONCLUSION

For the reasons set forth above, Defendants' Motion to Dismiss Plaintiff's FAC is GRANTED in part and DENIED in part.  The Motion is:

1. GRANTED as to Plaintiff's § 1983 claims against Jones and the County with leave to amend;

2. GRANTED as to Plaintiff's § 1983 claim against the Sheriff's Department without leave to amend;

3. DENIED as to Plaintiff's § 1983 claim against Boulware;

4. GRANTED as to Plaintiff's state law claims against Boulware with leave to amend;

5. DENIED as to Plaintiff's remaining state law claims.

IT IS SO ORDERED.

Dated: February 25, 2013

_____
MORRISON C. ENGLAND, JR., CHIEF JUDGE
UNITED STATES DISTRICT JUDGE